**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MEREDITH TWYMAN** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 24-6204 |
| | : | |
| **RECAP PA HOLDINGS, LLC** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                       **March 12, 2025**

     An African American woman allegedly struggling with arthritis claims the property manager of her rented apartment discriminates against her based on her race and her arthritis as demonstrated through a variety of disagreements concerning the habitability of her apartment and a parking space closer to her apartment unit for disabled persons. The woman pro se attempts to invoke our limited subject matter jurisdiction under the Fair Housing Act. Her claims sound almost entirely in Pennsylvania landlord-tenant law, but she continues to attempt to state a federal claim for discrimination. She has not done so after three attempts. But she also pro se asks for leave to file a third amended Complaint to sue the property owner. We find she does not, after three attempts, plead a claim under federal law against the property manager. But we will grant her one last leave to amend her Complaint if she can do so consistent with the facts and the governing law.

**I. Alleged pro se facts**

     Meredith Twyman, a "legally disabled" African American woman, signed a lease on August 27, 2024 to rent an apartment managed by Recap PA Holdings, LLC for $2,000 a month.[1]

     Ms. Twyman signed the lease a week after meeting with a Recap employee to tour the apartment.[2] The Recap employee explained the apartment was above a daycare center and next door to a trucking company, but he assured Ms. Twyman both operated during normal business hours and would close around 5:00 p.m.[3] The Recap employee did not tell Ms. Twyman individuals

from the trucking company would be outside their office around the clock.[4] The Recap employee did not tell Ms. Twyman about any defects or problems with the unit.[5] The Recap employee did not tell Ms. Twyman the heating system had been disconnected because of earlier disputes between earlier tenants and the businesses below.[6]

Ms. Twyman signed her lease and moved in. She then heard noises from the daycare and the trucking company and smelled cigarette smoke from the trucking company's employees.[7] Ms. Twyman complained to Recap.[8] It did not address or remediate her complaints.[9] She also told Recap she needed a separate handicapped parking space because she is "legally disabled and suffers from arthritic joint pain which become worse due to colder temperatures."[10] Recap did not provide Ms. Twyman with a designated handicapped parking space.[11] Ms. Twyman asked Recap how to turn on the heat because the temperature in her unit fell below sixty degrees.[12] Recap told Ms. Twyman the two units in her living room served as heating units for her apartment.[13] Ms. Twyman explained to Recap the windows let in cold air and the two units did not heat her apartment.[14] A maintenance contractor told Ms. Twyman her unit did not have a working heating system because it cost $25,000 to fix.[15] Water leaked through the ceiling of Ms. Twyman's apartment.[16] Recap did not fix the leak.[17]

**II. Analysis**

Ms. Twyman invokes our limited subject matter jurisdiction over this apartment habitability claim by alleging property manager Recap violated her civil rights on the basis of race and disability under the Fair Housing Act.[18] She seeks a declaratory judgment and economic damages.[19]

Recap now moves to dismiss this third attempt at pleading a claim in our limited jurisdiction.[20] Recap argues Ms. Twyman has not alleged a discrimination claim under the Fair

Housing Act because Ms. Twyman has not alleged facts sufficient to show racial or disability discrimination; neither intentional discrimination nor discriminatory effect. Recap further argues Ms. Twyman has not made out a claim for failure to accommodate because she has not alleged facts sufficient to show refusal to accommodate or supporting the necessity of the accommodation. Recap finally argues Ms. Twyman has not alleged a claim for declaratory judgment. Ms. Twyman opposes, arguing "factual allegations were pleaded to sufficiently state claims for which relief can be granted by the Court."[21] She argues she was owed a handicapped parking spot and Recap failed to provide one, but she does not plead new facts nor does she argue such facts.[22] Ms. Twyman simultaneously moves to amend her pleading a third time to add 963 Street Road LLC, the property owner, as a defendant for the same Fair Housing Act claims as well as her state law landlord-tenant concerns.

We agree with Recap and dismiss Ms. Twyman's federal claims without prejudice to her amending her complaint a third time to plead a claim for disability or racial discrimination against Recap or the property owner. We do not address Recap's arguments against Ms. Twyman's state law claims as we decline to exercise jurisdiction over them unless Ms. Twyman can plead federal claims.[23] We deny Ms. Twyman leave to amend as moot mindful Ms. Twyman can include 963 Street Road LLC in a third amended complaint while also addressing the pleading deficiencies consistent with her Rule 11 obligations.

### A. Ms. Twyman does not plead facts allowing us to plausibly infer racial discrimination under the Fair Housing Act.

Ms. Twyman claims Recap racially discriminated against her in violation of the Fair Housing Act. Recap argues Ms. Twyman does not plead a racial discrimination claim under the Fair Housing Act because she does not plead facts allowing us to plausibly find racial discrimination. We agree.

3

Congress, through the Fair Housing Act, prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."[24] The Department of Housing and Urban Development, through federal regulations, explain Congress's protections extend to prohibit "[f]ailing or delaying maintenance or repairs of . . . rental dwellings because of race . . . [or] handicap[.]"[25] In the Act, Congress confers a private right of action on individuals aggrieved by housing discrimination.[26]

"To establish a prima facie case" under section 3604(b) of the Fair Housing Act, Ms. Twyman must plead "a member of a statutorily protected class was not offered the same terms, conditions or privileges of rental of a dwelling or not provided the same services or facilities in connection therewith made available to others under circumstances giving rise to a reasonable inference of prohibited discrimination."[27] More specifically, she must show either "the challenged actions were motivated by intentional discrimination or that the actions had a discriminatory effect on a protected class, regardless of motivation."[28]

"Evidence of discriminatory intent may include, insofar as the considerations are relevant to this case, the impact of an action or decision, the historical background of a decision, the sequence of events leading up to the decision and departures from the normal substantive criteria."[29] Ms. Twyman makes no allegations of racial discrimination at all, outside of plainly stating she was discriminated against without any factual support. "She does not allege, for example, that she was treated differently from tenants who were not African American . . . , or that Defendants made remarks revealing a race-based animosity."[30] Ms. Twyman does not allege intentional racial discrimination under the Act because she has alleged no direct or indirect evidence of discriminatory intent.

"Discriminatory effect may be proved by showing either adverse impact to a particular minority group or harm to the community generally by the perpetuation of segregation."[31] Ms. Twyman would need to plead facts allowing us to plausibly infer a policy or decision of Recap impacted her differently than other tenants in her building because of her race.[32] "There is no allegation that Defendants' conduct in renting, servicing and/or maintaining the dwelling units . . . had a discriminatory effect on . . . African Americans[.]"[33] Ms. Twyman does not allege discriminatory effect because she does not allege Recap's conduct impacted her differently than the Caucasian tenants living in Recap-managed units.

Ms. Twyman does not plead a race discrimination claim under the Fair Housing Act. We dismiss these claims without prejudice to allege specific facts consistent with her truthfulness obligations in Rule 11 of discriminatory intent or discriminatory effect on the basis of race.

### B. Ms. Twyman does not plead facts allowing us to plausibly infer disability discrimination under the Fair Housing Act.

Ms. Twyman claims she has suffered disability discrimination under the Fair Housing Act and has been denied a reasonable accommodation. Recap argues Ms. Twyman does not plead a disability discrimination claim under the Fair Housing Act. We agree.

Congress prohibits housing discrimination through the Fair Housing Act based on disability along with discrimination based on "race, color, religion, sex, familial status, or national origin."[34] Congress prohibits, among other things, "refusing to rent a dwelling and discrimination in the terms, conditions or privileges of rental or in the provision of services associated with rental."[35] Under the Fair Housing Act, "handicap" means "(1) a physical or mental impairment which substantially limits one or more of a person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment[.]"[36] Ms. Twyman swears she is legally disabled due to arthritis.[37]

5

### 1. Ms. Twyman does not allege an intentional discrimination or a discriminatory effect claim.

Ms. Twyman does not plead a disability discrimination claim under the Fair Housing Act because she does not plead facts allowing us to plausibly infer intentional discrimination or a discriminatory effect.

As is true for race-based claims, to prevail on an intentional discrimination claim on the basis of disability, "a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action."[38] "Plaintiff essentially states in the Complaint that she is disabled and then lists a number of incidents in which Defendants allegedly mistreated her."[39] But "[s]imply stating that one endured [] discrimination without presenting allegations suggestive of such conduct does not meet our pleading standards."[40] Ms. Twyman does not plead Recap's animus towards handicapped people or discriminatory intent.

Neither does Ms. Twyman allege a discriminatory effect. "Discriminatory effect may be proved by showing either adverse impact to a particular minority group or harm to the community generally by the perpetuation of segregation."[41] "In order to plausibly state a claim of disparate impact under the [Fair Housing Act], a plaintiff must allege facts to 'show the [Defendant's action had a greater adverse impact on the protected group (in this case the [] handicapped) than on others.'"[42] But Ms. Twyman makes "no allegations that residents who were similarly situated but not disabled were treated more favorably."[43] To the extent Ms. Twyman "might be alleging that Apartment Defendant[']s refusal to honor her requests had a disparate impact on her as a handicapped person, she has failed to state a claim, for the facts she has put forth pertain only to *her* specific housing situation."[44] Ms. Twyman does not allege discriminatory effect.

### 2. Ms. Twyman does not allege a reasonable accommodation claim.

Discrimination under the Fair Housing Act also includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."[45] To make out a reasonable accommodation claim, Ms. Twyman must "plead enough facts to make out the three elements set forth in [42 U.S.C.] § 3604(f)(3)(B): refusal, reasonable accommodation, and necessity/equal opportunity."[46]

Ms. Twyman swears "she advised Defendant that she required a separate handicapped parking space due to her disability" before moving into the apartment.[47] We note there is no evidence in the lease of a request for reasonable accommodation.[48] And Ms. Twyman does not explain to whom she made this request and the nature of their refusal to accommodate. Ms. Twyman swears "[t]o date, Defendant has never provided a handicapped parking space that would protect others from parking in the space Defendant designated for the occupant of the apartment."[49] But without a factual allegation as to when, how, and to whom her request for a reasonable accommodation was made, we are unable to find Ms. Twyman has alleged a refusal.

Neither has Ms. Twyman alleged necessity. A reasonable accommodation is necessary if, "but for the accommodation, [a plaintiff] likely will be denied an equal opportunity to enjoy the housing of their choice."[50] Ms. Twyman swears only she is "over the age of 60 and legally disabled and suffers from arthritic joint pain which become worse due to colder temperatures."[51] Ms. Twyman alleges she requires "parking that [i]s visibly marked and separated as handicapped parking."[52] But she does not allege why. She does not explain how her arthritis impacts her mobility, or why she is able to climb the stairs to a second-story apartment but cannot walk feet further across a parking lot. It is not enough to say she is disabled and therefore requires a parking spot. Under the Fair Housing Act, Ms. Twyman must allege *why* the accommodation is necessary.

7

"[B]ecause Plaintiff must make a showing that the accommodation she sought was necessary to prevent her from suffering unequal treatment on the basis of her handicap, and her Complaint fails to do so as stated, Plaintiff's [Fair Housing Act] claim must be dismissed."[53]

Ms. Twyman does not plead a disability discrimination claim under the Fair Housing Act. We dismiss these claims without prejudice to allege specific facts consistent with her truthfulness obligations in Rule 11 of (1) discriminatory intent or discriminatory effect on the basis of disability; and (2) her request to Recap and the necessity of a handicapped parking space.[54]

### C. We again decline to exercise supplemental jurisdiction.

Ms. Twyman does not plead a federal claim. Ms. Twyman also alleges a variety of Pennsylvania state law claims, but in light of our dismissal of her federal claims, we lack subject matter jurisdiction over her state law claims unless we exercise our discretion to retain supplemental jurisdiction. We may consider our supplemental jurisdiction *sua sponte*.[55] Congress allows us to exercise supplemental jurisdiction over state law claims where the state law claims "form part of the same case or controversy under Article III[.]"[56] But Congress empowers us to decline exercising supplemental jurisdiction over state law claims if we dismissed "all claims over which [we] ha[ve] original jurisdiction."[57] We decline to exercise supplemental jurisdiction absent a federal question so we need not address Recap's challenges to the state law claims.

## III. Conclusion

We dismiss Ms. Twyman's Fair Housing Act claims without prejudice to her amending her complaint a fourth (and likely final) time to plead a claim for disability or racial discrimination, or a claim for denial of a reasonable accommodation forming a basis for our limited subject matter jurisdiction.

---

[1] ECF 17 ¶¶ 1, 92–93, 100.

---

[2] *Id.* ¶ 8.

[3] *Id.* ¶ 9.

[4] *Id.* ¶ 67.

[5] *Id.* ¶ 64.

[6] *Id.* ¶ 66.

[7] *Id.* ¶¶ 13–14.

[8] *Id.* ¶¶ 15, 18.

[9] *Id.* ¶ 18.

[10] *Id.* ¶¶ 20, 24. The parties did not reference a request for a reasonable accommodation contained in Ms. Twyman's lease. ECF 24-3.

[11] ECF 17 ¶ 20.

[12] *Id.* ¶ 25.

[13] *Id.* ¶ 26.

[14] *Id.* ¶ 28.

[15] *Id.* ¶¶ 32, 34.

[16] *Id.* ¶¶ 35, 36.

[17] *Id.* ¶ 36.

[18] ECF 17. Ms. Twyman first sued Recap alleging it discriminated against her based on her disability and race under the Fair Housing Act and the Pennsylvania Fair Housing Act and claimed fraudulent misrepresentation on November 14, 2024. ECF 1. Ms. Twyman amended her Complaint and voluntarily dropped all federal claims. ECF 4. We dismissed her first amended Complaint without prejudice and closed the case as we declined to exercise supplemental jurisdiction over the remaining state law claims. ECF 9. Ms. Twyman filed a second amended Complaint realleging a federal discrimination claim in the closed case but did not move to reopen the case or seek our permission to amend her pleading under Rule 15(a)(2), which legally voided the filing. ECF 10; *McAlarney v. Roy's Constr., Inc.*, No. 2015-54, 2018 WL 792045, at *2 (D.V.I. Feb. 8, 2018) ("[W]hen a party is required to seek the Court's leave before filing a pleading, the failure to seek such leave renders the pleading a legal nullity."). Recap moved to dismiss the legally void second amended Complaint. ECF 12. We struck the second amended Complaint as filed without leave and legally void. ECF 14. We denied Recap's Motion to dismiss as moot. *Id.* Ms. Twyman moved under Rules 15(a)(2) and 60(b) to reopen the case and amend her complaint. ECF 15. We granted the Motion and Ms. Twyman filed her second amended Complaint, through which she again includes federal claims forming a basis for our subject matter jurisdiction. ECFs 16, 17.

Ms. Twyman also brings claims for fraudulent concealment, intentional failure to disclose, and breach of contract under Pennsylvania law. *Id.*

[19] ECF 17 at 22.

[20] ECF 24. The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

Recap attaches a number of documents to its Motion to dismiss. We may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a motion to dismiss. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). A court may also properly consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* Additionally, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation and internal punctuation omitted). As Ms. Twyman brings a claim for breach of contract of her lease, the lease document is integral to her second amended Complaint.

10

---

Of the many documents Recap submitted, we may only consider the lease in deciding this Motion to dismiss.

[21] ECF 29 at 1.

[22] *See id. generally*.

[23] We will afford Recap an opportunity to renew its objections to Ms. Twyman's state law claims if warranted.

[24] 42 U.S.C. § 3604(b).

[25] 24 C.F.R. § 100.65(b)(2); *see Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 210 (1972) (holding the Department of Housing and Urban Development's construction of the Civil Rights of 1968 is given great weight); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) (courts may pay careful attention to the judgment of an agency in interpreting a statute).

[26] 42 U.S.C. § 3613(a)(1)(A). Individuals may alternatively seek administrative enforcement by filing a complaint with the Secretary of the United States Department of Housing and Urban Development, *id.* § 3610, but Congress does not require an individual exhaust their administrative remedies before filing a civil action; aggrieved individuals are welcome to pursue both avenues. *Id.* § 3613(a)(2). Our Court of Appeals has explained "the plain language of sections 3610 and 3613 state that a dual enforcement scheme exists that allows an aggrieved party to pursue both private and administrative enforcement until such time as either avenue has achieved resolution of the claim." *Mitchell v. Cellone*, 389 F.3d 86, 90 (3d Cir. 2004).

[27] *Corwin v. B'Nai B'Rith Senior Citizen Hous., Inc.*, 489 F. Supp. 2d 405, 409 (D. Del. 2007) (citing *United States v. Balistrieri*, 981 F.2d 916, 929 (7th Cir.1992)).

[28] *Mitchell v. Walters*, No. 10-1061, 2010 WL 3614210, at *6 (D.N.J. Sept. 8, 2010) (first citing *Cmty. Svcs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005); then citing *Doe v. City of Butler, Pa.*, 892 F.2d 315, 323 (3d Cir. 1989)); *see also Curto v. A Country Place Condo. Ass'n*, 921 F.3d 405, 411 n.4 (3d Cir. 2019) ("[W]e frequently rely on our Title VII jurisprudence to guide our understanding of the FHA's antidiscrimination provisions").

[29] *Mitchell*, 2010 WL 3614210, at *6 (citations omitted).

[30] *Id.*

[31] *Koorn v. Lacey Twp.*, 78 F. App'x 199, 206 (3d Cir. 2003) (citations omitted).

[32] *See, e.g.*, *Corwin*, 489 F. Supp. 2d at 410 ("The Complaint and its Amendments are clear that as to the flag display issue, Plaintiffs were treated the same as all the tenants in their building.").

[33] *Mitchell*, 2010 WL 3614210, at *6.

[34] 42 U.S.C. §§ 3604(b), 3604(f).

---

[35] *Mitchell*, 2010 WL 3614210, at *5 (citing 42 U.S.C. § 3604(b), (f)).

[36] 42 U.S.C. § 3602(h).

[37] ECF 17 ¶ 24.

[38] *431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 284 & n.27 (3d Cir. 2020) (quoting *Cmty. Servs.*, 421 F.3d at 177) (cleaned up).

[39] *Liggon-Redding v. Generations, Interstate, Harvest House APT*, No. 14-3191, 2015 WL 3991148, at *3 (D.N.J. June 30, 2015).

[40] *Deserne v. Madlyn & Leonard Abramson Ctr. for Jewish Life, Inc.*, No. 10-03694, 2011 WL 605699, at *2 (E.D. Pa. Feb. 16, 2011) (quoting *Funayama v. Nichia Am. Corp.*, No. 08-5599, 2009 WL 1437656 at *5 (E.D. Pa. May 21, 2009)).

[41] *Koorn*, 78 F. App'x at 206 (quoting *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 937 (2d Cir. 1988)).

[42] *Coyne v. Holy Fam. Apartments*, No. 19-4583, 2020 WL 2063475, at *6 (E.D. Pa. Apr. 29, 2020) (quoting *Lapid-Laurel v. Zoning Bd. of Adjustment*, 284 F.3d 442, 466-67 (3d Cir. 2002)).

[43] *Liggon-Redding*, 2015 WL 3991148, at *3.

[44] *Coyne*, 2020 WL 2063475, at *6 (emphasis in original).

[45] 42 U.S.C. § 3604(f)(3)(B).

[46] *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111 (3d Cir. 2018).

[47] ECF 17 ¶ 20.

[48] ECF 24-3.

[49] ECF 17 ¶ 20.

[50] *Lapid-Laurel, L.L.C.*, 284 F.3d at 460 (quoting *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 795 (6th Cir. 1996)).

[51] ECF 17 ¶ 24.

[52] *Id.* ¶ 95.

[53] *Coyne*, 2020 WL 2063475, at *6.

[54] Ms. Twyman does not properly seek a declaratory judgment. Ms. Twyman alleges "Declaratory Relief is authorized by 28 U.S.C.§2201." ECF 17 ¶ 47. And, as a remedy, Ms. Twyman seeks "(a) a declaratory judgment finding that Defendant's actions;" but does not complete the sentence or explain what she would like us to find. *Id.* at 22. Under the federal Declaratory Judgment Act, we

may "[i]n a case of actual controversy within [our] jurisdiction . . . declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "That Act does not itself create an independent basis for federal jurisdiction but instead provides a remedy for controversies otherwise properly within the court's subject matter jurisdiction." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)). Should Ms. Twyman amend her second amended Complaint, and should she still desire declaratory relief, she must articulate the declaratory relief she seeks.

[55] *See Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016).

[56] 28 U.S.C. § 1367(a).

[57] *Id.* § 1367(c)(3); *cf. Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) (we must remand state law claims before us under section 1367 supplemental jurisdiction based on federal question where all federal claims are dismissed from the case).