IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MEREDITH TWYMAN** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 24-6204 |
| | : | |
| **RECAP PA HOLDINGS, LLC, 963 STREET ROAD LLC** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                         **April 28, 2025**

    An apartment tenant disappointed in the surrounding noise and parking arrangements at her new apartment returns with her fourth complaint since moving there about eight months ago claiming her landlord and property manager discriminated against her based on her race and disability, along with references to retaliation. But she pleads no facts the landlord or property manager directed discriminatory or retaliatory conduct towards her. Her pro se allegations and attached documents confirm the management company's repeated efforts to address its tenant's many complaints including setting private parking spot outside of her unit at her request. And she may have some argument about the quality of the apartment based on inadequate heat or lighting not to her liking. But those are not federal claims. The tenant has now tried four times to convert concerns about the quality of her apartment into a federal claim. She has not pleaded facts. We dismiss her fourth attempt (through the third amended Complaint) with prejudice as to the federal claims. Further amendment of federal claims in manifestly futile. We dismiss her state law habitability concerns without prejudice to pursue these state law claims in state court.

    **I. Alleged pro se facts**

    Meredith Twyman, a "legally disabled" African American woman, signed a lease on August 27, 2024 to rent an apartment in Bucks County managed by Recap PA Holdings, LLC and

owned by Recap and 963 Street Road LLC for $2,000 a month.[1] We now again review her complaints about her apartment.[2]

Ms. Twyman met with a Recap employee to tour the apartment before she signed the lease.[3] The Recap employee confirmed the obvious fact the apartment is located above a daycare center and next door to a trucking company, but he assured Ms. Twyman both operated during normal business hours and would close around 5:00 p.m.[4] The Recap employee did not tell Ms. Twyman individuals from the trucking company would be outside their office around the clock.[5] The Recap employee did not tell Ms. Twyman about defects or problems with the unit.[6]

Ms. Twyman signed her lease and moved in. She then heard noises from the daycare and the trucking company and smelled cigarette smoke from the trucking company's employees.[7] Ms. Twyman complained to Recap.[8] It did not address or remediate her complaints.[9] She also told Recap she needed a separate handicapped parking space because she is "legally disabled" and "suffers from degenerative, chronic disc pain, scoliosis and anxiety disorder."[10] Ms. Twyman admits Recap and 963 Street Road provided Ms. Twyman with a parking spot marked with a sign for her exclusive use outside of her door, but Recap did not provide Ms. Twyman with a handicap logo parking sign.[11] Ms. Twyman complained to Recap and 963 Street Road about the lighting in the parking lot.[12] They did not adjust the lighting.[13] Ms. Twyman asked Recap how to turn on the heat because the temperature in her unit fell below sixty degrees.[14] Recap told Ms. Twyman the two units in her living room served as heating units for her apartment.[15] Ms. Twyman explained to Recap the windows let in cold air and the two units did not heat her apartment.[16] A maintenance contractor told Ms. Twyman her unit did not have a working heating system because it cost $25,000 to fix.[17] Water leaked through the ceiling of Ms. Twyman's apartment.[18] Recap did not fix the leak.[19]

**II. Analysis**

Ms. Twyman tries to invoke our limited subject matter jurisdiction over this apartment habitability claim. She pro se alleges, in her most recent third amended Complaint, property manager Recap and landlord 963 Street Road LLC violated her civil rights based on her African American race and identified disability under the Fair Housing Act.[20] She again seeks a declaratory judgment and economic damages.[21]

Recap and 963 Street Road now move to dismiss this fourth attempt at pleading a claim in our limited jurisdiction.[22] Recap and 963 Street Road argue Ms. Twyman has not alleged a discrimination claim under the Fair Housing Act because Ms. Twyman has not alleged facts showing racial or disability discrimination. Recap and 963 Street Road further argue Ms. Twyman has not made out a claim for failure to accommodate because she has not alleged facts sufficient to show the necessity of the accommodations. Ms. Twyman opposes, arguing "factual allegations were pleaded to sufficiently state claims for which relief can be granted by the Court."[23]

We agree with Recap and 963 Street Road and dismiss Ms. Twyman's federal claims with prejudice after four attempts.[24] "'The Fair Housing Act does not create some general federal cause of action governing landlord-tenant disputes. It is not enough for a plaintiff to merely describe a series of housing maintenance concerns in [her] complaint to state a claim under the [Fair Housing Act]. Instead, the plaintiff must plead some facts that plausibly link these housing maintenance concerns or dissatisfaction with landlord-tenant proceedings' to discrimination[.]"[25] Ms. Twyman may not amend her complaint again and the matter will be closed. We do not address Recap and 963 Street Road's arguments against Ms. Twyman's state law claims as we decline to exercise jurisdiction over them and dismiss those state law claims without prejudice.[26] Ms. Twyman is free to bring her state law claims in the state courts, but cannot continue to pursue relief here.

### A. Ms. Twyman does not plead facts allowing us to plausibly infer racial discrimination under the Fair Housing Act.

We dismissed Ms. Twyman's racial discrimination claim with leave to amend to plead facts showing discriminatory intent or discriminatory effect.[27] Ms. Twyman amended her complaint and again claims racial discrimination against her in violation of the Fair Housing Act.[28] But she did not add facts. We again dismiss this claim, this time with prejudice.

Congress, through the Fair Housing Act, prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."[29] In the Act, Congress confers a private right of action on individuals aggrieved by housing discrimination.[30] To establish a prima facie case under section 3604(b) of the Fair Housing Act, Ms. Twyman must show either "the challenged actions were motivated by intentional discrimination or that the actions had a discriminatory effect on a protected class, regardless of motivation."[31]

"Evidence of discriminatory intent may include . . . the impact of an action or decision, the historical background of a decision, the sequence of events leading up to the decision and departures from the normal substantive criteria."[32] Ms. Twyman does not allege facts suggesting racial discrimination at all, outside of plainly stating she was discriminated against without factual support. "She does not allege, for example, that she was treated differently from tenants who were not African American . . . , or that Defendants made remarks revealing a race-based animosity."[33] Ms. Twyman does not allege intentional racial discrimination under the Act because she has not (after four attempts) alleged direct or indirect evidence of discriminatory intent.

"Discriminatory effect may be proved by showing either adverse impact to a particular minority group or harm to the community generally by the perpetuation of segregation."[34] Ms.

4

Twyman would need to plead facts allowing us to plausibly infer a policy or decision of Recap or 963 Street Road impacted her differently than other tenants in her building because of her race.[35] "There is no allegation that Defendants' conduct in renting, servicing and/or maintaining the dwelling units . . . had a discriminatory effect on . . . African Americans[.]"[36] Ms. Twyman does not allege discriminatory effect because she does not allege Recap and 963 Street Road's conduct impacted her differently than Caucasian tenants.

Ms. Twyman does not plead a race discrimination claim under the Fair Housing Act after four opportunities to do so. We dismiss this claim with prejudice.

### B. Ms. Twyman does not plead facts allowing us to plausibly infer disability discrimination under the Fair Housing Act.

We dismissed Ms. Twyman's disability discrimination claim with leave to amend to plead facts in support.[37] Ms. Twyman amended and she again claims discrimination against her on the basis of disability in violation of the Fair Housing Act. But, again, she did not add facts in support of this claim. We once more dismiss this claim, this time with prejudice.

Congress prohibits housing discrimination based on disability/handicap through the Fair Housing Act.[38] Congress prohibits, among other things, "refusing to rent a dwelling and discrimination in the terms, conditions or privileges of rental or in the provision of services associated with rental."[39] Under the Fair Housing Act, "handicap" means "(1) a physical or mental impairment which substantially limits one or more of a person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment[.]"[40] Ms. Twyman swears she is "legally disabled as defined under the American with Disabilities Act (ADA) and suffers from degenerative and chronic disc pain caused by scoliosis."[41]

5

### i. Ms. Twyman does not allege an intentional discrimination or a discriminatory effect claim.

Ms. Twyman, again, does not plead a disability discrimination claim under the Fair Housing Act because she does not plead facts allowing us to plausibly infer intentional disability discrimination or a discriminatory effect against the disabled.

As is true for race-based claims, to prevail on her intentional discrimination claim on the basis of disability, Ms. Twyman "must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action."[42] "Plaintiff essentially states in the Complaint that she is disabled and then lists a number of incidents in which Defendants allegedly mistreated her."[43] But "[s]imply stating that one endured [] discrimination without presenting allegations suggestive of such conduct does not meet our pleading standards."[44] Ms. Twyman does not plead Recap and 963 Street Road's animus towards handicapped people or discriminatory intent.

Neither does Ms. Twyman allege a discriminatory effect. "Discriminatory effect may be proved by showing either adverse impact to a particular minority group or harm to the community generally by the perpetuation of segregation."[45] "In order to plausibly state a claim of disparate impact under the [Fair Housing Act], a plaintiff must allege facts to 'show [Recap and 963 Street Road]'s action had a greater adverse impact on the protected group (in this case the . . . handicapped) than on others.'"[46] But Ms. Twyman makes "no allegations that residents who were similarly situated but not disabled were treated more favorably."[47] To the extent Ms. Twyman "might be alleging that Apartment Defendant['s] refusal to honor her requests had a disparate impact on her as a handicapped person, she has failed to state a claim, for the facts she has put forth pertain only to *her* specific housing situation."[48] Ms. Twyman does not allege discriminatory effect.

### ii. Ms. Twyman does not allege a reasonable accommodation claim.

Disability discrimination under the Fair Housing Act also includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]"[49] To make out a reasonable accommodation claim, Ms. Twyman must "plead enough facts to make out the three elements set forth in [section] 3604(f)(3)(B): refusal, reasonable accommodation, and necessity/equal opportunity."[50]

Ms. Twyman swears she repeatedly requested a private handicapped parking spot even before she moved in.[51] As a threshold issue, Ms. Twyman seems to confuse the requirements under the Americans with Disabilities Act, which is not a basis for any of her claims and does not apply to her landlord or management company, with the requirements of the Fair Housing Act.[52] The Americans with Disabilities Act covers commercial businesses' obligation to provide appropriately marked handicapped parking. But this case is not an Americans with Disabilities Act case because Recap and 963 Street Road are not covered by the Americans with Disabilities Act.[53] They are, instead, obligated to meet certain obligations by Congress under the Fair Housing Act. Ms. Twyman admits Recap and 963 Street Road provided a parking spot for her exclusive use outside of her door.[54] They marked the parking spot with a custom sign designating the spot for her exclusive use.[55] The issue seems to be Ms. Twyman believes this spot should be designated for her exclusive use *and* it should be marked by a blue handicapped sign. But Recap and 963 Street Road are not required to put a blue handicapped placard on the spot to accommodate Ms. Twyman's need. The Fair Housing Act only requires a reasonable accommodation on the basis of disability. Ms. Twyman has never pleaded a need of a blue handicapped placard on the spot instead of a sign designating it for her exclusive use.[56] There can be no better accommodation than a private parking spot outside her door. This claim lacks merit.

7

Ms. Twyman tries to avoid dismissal by introducing a new basis for a reasonable accommodation claim. Ms. Twyman swears she complained to Recap about the absence of light in the parking lot and Recap did nothing.[57] We note there is record evidence Ms. Twyman has a working light outside her door but desires a brighter light.[58] And Ms. Twyman claims disability due to scoliosis and anxiety.[59]

A reasonable accommodation is necessary if, "but for the accommodation, [a plaintiff] likely will be denied an equal opportunity to enjoy the housing of their choice."[60] Ms. Twyman alleges she requires a brighter light and "there has been no attempt to modify the existing lighting."[61] But she does not explain how her scoliosis necessitates a bright light. She does not allege she suffers from a visual impairment disability. We "find no nexus between her alleged disabilities and the request for repair" because brighter lighting for safety "applies to everyone, regardless of disability."[62] "[B]ecause Plaintiff must make a showing that the accommodation she sought was necessary to prevent her from suffering unequal treatment on the basis of her handicap, and her Complaint fails to do so as stated, Plaintiff's [Fair Housing Act] claim must be dismissed."[63]

Ms. Twyman does not plead a disability discrimination claim under the Fair Housing Act. We dismiss these claims with prejudice.

### C. Mr. Twyman does not allege a retaliation claim.

Ms. Twyman amends to include a claim for retaliation. Recap and 963 Street Road argue Ms. Twyman has not alleged facts establishing retaliation. We agree.

Congress, through the Fair Housing Act, makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his/her having exercised or enjoyed . . . any right granted or protected" by the Act.[64] To state a retaliation claim Ms. Twyman must allege: (1) she is a protected individual under the Act; (2) she was engaged in

the exercise or enjoyment of her fair housing rights; (3) Recap and 963 Street Road coerced, threatened, intimidated, or interfered with her because of the protected activity; and (4) Recap and 963 Street Road were motivated by an intent to discriminate.[65]

As discussed above, Ms. Twyman did not allege a fact in support of her claims of intentional race or disability discrimination. As such, this claim is similarly meritless and we dismiss it with prejudice.[66]

### D. We again decline to exercise supplemental jurisdiction.

Ms. Twyman has not pleaded a federal claim after four tries. We provided ample guidance as to her remedies. We must dismiss her federal claims with prejudice. She cannot plead facts allowing us to plausibly infer a federal claim.

We are not decided the merits of her Pennsylvania state law claims. But considering our dismissal of her federal claims, we lack subject matter jurisdiction over her state law claims unless we exercise our discretion to retain supplemental jurisdiction.

We may consider our supplemental jurisdiction *sua sponte*.[67] Congress allows us to exercise supplemental jurisdiction over state law claims where the state law claims "form part of the same case or controversy under Article III[.]"[68] But Congress empowers us to decline exercising supplemental jurisdiction over state law claims if we dismissed "all claims over which [we] ha[ve] original jurisdiction[.]"[69] We decline to exercise supplemental jurisdiction absent a federal question so we need not address Recap and 963 Street Road's challenges to Ms. Twyman's state law claims.

### III. Conclusion

We dismiss Ms. Twyman's Fair Housing Act claims with prejudice. We dismiss her state law claims without prejudice to her pursuing these claims in state court.

---

[1] ECF 39 ¶¶ 1, 89, 125–26.

[2] We may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a motion to dismiss. *Pension Ben. Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). We may also properly consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* Additionally, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation and internal punctuation omitted).

Our colleagues have held we may also consider correspondence between the parties when ruling on a motion to dismiss if that correspondence is at the heart of the claims in the Complaint, as it is here. *See, e.g.*, *Brusco v. Harleysville Ins. Co.*, No. 14-914, 2014 WL 2916716, at *5 (D.N.J. June 26, 2014) ("In evaluating the pending motion to dismiss, the Court may properly consider the letter attached to the Defendant's motion to dismiss."). This is because "a plaintiff cannot be allowed to improperly 'survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.'" *Id.* (quoting *Pension Ben. Guar. Corp.*, 998 F.2d at 1196). "To consider such a document, the complaint need not 'explicitly rely[]' on the defendant's attachment," *id.* (quoting *Burlington Coat Factory*, 114 F.3d at 1426), but plaintiff's claim must be "based on that document." *Id.* Ms. Twyman does not dispute the authenticity of the emails attached to Defendants' Motion to dismiss. ECF 46. Ms. Twyman alleges she made requests via email which were ignored as the basis for her various claims, so we may fairly consider the emails between the parties attached to the Motion to dismiss. Those emails show none of Ms. Twyman's requests were ignored.

[3] ECF 39 ¶ 8.

[4] *Id.* ¶ 9.

[5] *Id.* ¶¶ 15–17.

[6] *Id.* ¶ 117.

[7] *Id.* ¶¶ 13–14.

[8] *Id.* ¶ 15.

[9] *Id.* ¶ 18.

[10] *Id.* ¶¶ 20, 24.

[11] *Id.* ¶ 35 ("Ms. Twyman asserts that on or around March 18, 2025, Defendants replaced the tenant sign with another ADA non-compliant smaller and barely visible sign which reads 'Reserved Parking for 967 Street Road Apartment B'."); *id.* ¶ 20.

[12] *Id.* ¶¶ 40–43.

10

---

[13] *Id.* ¶ 45. This allegation made by Ms. Twyman is contradicted by email correspondence, as discussed more fully below.

[14] *Id.* ¶ 47.

[15] *Id.* ¶ 48.

[16] *Id.* ¶ 50.

[17] *Id.* ¶ 56.

[18] *Id.* ¶ 57.

[19] *Id.*

[20] ECF 39. Ms. Twyman first sued Recap alleging it discriminated against her based on her disability and race under the Fair Housing Act and alleged state law claims on November 14, 2024. ECF 1. Ms. Twyman amended her Complaint and voluntarily dropped all federal claims. ECF 4. We dismissed her first amended Complaint without prejudice and closed the case as we declined to exercise supplemental jurisdiction over the remaining state law claims. ECF 9. Ms. Twyman filed a second amended Complaint realleging a federal discrimination claim in the closed case but did not move to reopen the case or seek our permission to amend her pleading under Rule 15(a)(2), which legally voided the filing. ECF 10. Recap moved to dismiss the legally void second amended Complaint. ECF 12. We struck the second amended Complaint as filed without leave and legally void. ECF 14. We denied Recap's Motion to dismiss as moot. *Id.* Ms. Twyman moved under Rules 15(a)(2) and 60(b) to reopen the case and amend her complaint. ECF 15. We granted the Motion and Ms. Twyman filed her second amended Complaint. ECFs 16, 17. Defendant Recap moved to dismiss. ECF 24. Ms. Twyman opposed. ECF 29. We dismissed her second amended Complaint for failure to state a federal claim and granted her leave to amend to file a fourth complaint. ECF 35, 36. Ms. Twyman amended her complaint again. ECF 39. Defendant Recap and newly added Defendant 963 Street Road LLC moved to dismiss. ECF 45. Ms. Twyman responded. ECF 46.

[21] ECF 39 at 28.

[22] ECF 45. The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A

pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[23] ECF 46-1 at 5.

[24] ECF 39 Count I.

[25] *Rosado v. Whitcraft*, No. 23-3717, 2023 WL 8720137, at *8 (E.D. Pa. Dec. 15, 2023) (quoting *Palencar v. Raijski*, No. 15-1189, 2016 WL 6908116, at *5 (M.D. Pa. Nov. 9, 2016)).

[26] *Id.* Counts II–III.

[27] ECFs 35, 36.

[28] ECF 39 Count I.

[29] 42 U.S.C. § 3604(b).

[30] *Id.* § 3613(a)(1)(A).

[31] *Mitchell v. Walters*, No. 10-1061, 2010 WL 3614210, at *6 (D.N.J. Sept. 8, 2010) (first citing *Cmty. Svcs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005); then citing *Doe v. City of Butler, Pa.*, 892 F.2d 315, 323 (3d Cir. 1989)); *see also Curto v. A Country Place Condo. Ass'n*, 921 F.3d 405, 411 n.4 (3d Cir. 2019) (Fuentes, J, concurring) (citation omitted) ("[W]e frequently rely on our Title VII jurisprudence to guide our understanding of the FHA's antidiscrimination provisions").

[32] *Mitchell*, 2010 WL 3614210, at *6 (citations omitted).

[33] *Id.*

[34] *Koorn v. Lacey Twp.*, 78 F. App'x 199, 206 (3d Cir. 2003) (citations omitted).

[35] *See, e.g.*, *Corwin v. B'Nai B'Rith Senior Citizen Hous., Inc.*, 489 F. Supp. 2d 405, 410 (D. Del. 2007) ("The Complaint and its Amendments are clear that as to the flag display issue, Plaintiffs were treated the same as all the tenants in their building.").

[36] *Mitchell*, 2010 WL 3614210, at *6.

[37] ECFs 35, 36.

[38] 42 U.S.C. § 3604(f).

[39] *Mitchell*, 2010 WL 3614210, at *5 (citing 42 U.S.C. § 3604(b), (f)).

[40] 42 U.S.C. § 3602(h).

[41] ECF 39 ¶ 94.

[42] *431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 284 & n.27 (3d Cir. 2020) (quoting *Cmty. Servs.*, 421 F.3d at 177) (cleaned up).

[43] *Liggon-Redding v. Generations, Interstate, Harvest House APT*, No. 14-3191, 2015 WL 3991148, at *3 (D.N.J. June 30, 2015).

[44] *Deserne v. Madlyn & Leonard Abramson Ctr. for Jewish Life, Inc.*, No. 10-03694, 2011 WL 605699, at *2 (E.D. Pa. Feb. 16, 2011) (quoting *Funayama v. Nichia Am. Corp.*, No. 08-5599, 2009 WL 1437656, at *5 (E.D. Pa. May 21, 2009)).

[45] *Koorn*, 78 F. App'x at 206 (quoting *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 937 (2d Cir. 1988)) (cleaned up).

[46] *Coyne v. Holy Family Apartments*, No. 19-4583, 2020 WL 2063475, at *6 (E.D. Pa. Apr. 29, 2020) (quoting *Lapid-Laurel v. Zoning Bd. of Adjustment*, 284 F.3d 442, 466-67 (3d Cir. 2002)).

[47] *Liggon-Redding*, 2015 WL 3991148, at *3.

[48] *Coyne*, 2020 WL 2063475, at *6 (emphasis in original).

[49] 42 U.S.C. § 3604(f)(3)(B).

[50] *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111 (3d Cir. 2018).

[51] ECF 39 ¶¶ 20, 31.

[52] *See, e.g.*, *Lloyd v. Manbel Devco I LP.*, No. 23-2261, 2024 WL 811714, at *7 n.11 (E.D. Pa. Feb. 27, 2024) ("Although the shopping center is a place of public accommodation, Lloyd's complaint that there is not a sidewalk connecting the shopping center to the apartment complex fails to state a claim because there is no duty to provide safe passage to persons to/from a place of public accommodation), *opinion vacated in part on unrelated grounds*, No. 23-2261, 2024 WL 5440062 (E.D. Pa. Mar. 11, 2024).

[53] *Id.*

[54] ECF 39 ¶ 35 ("Ms. Twyman asserts that on or around March 18, 2025, Defendants replaced the tenant sign with another ADA non-compliant smaller and barely visible sign which reads 'Reserved Parking for 967 Street Road Apartment B'.").

[55] *Id.*

[56] And, in fact, the spot she has been provided is even more protected for her exclusive use than a general handicapped spot would be.

[57] *Id.* ¶¶ 40–45.

[58] ECF 45-2 at 18, 28.

[59] ECF 39 ¶ 24.

[60] *Lapid-Laurel, L.L.C.*, 284 F.3d at 460 (quoting *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 795 (6th Cir. 1996)).

[61] ECF 39 ¶ 43.

[62] *Coyne*, 2020 WL 2063475, at *7.

[63] *Id.* at *6.

[64] 42 U.S.C. § 3617.

[65] *El v. People's Emergency Ctr.*, 438 F. Supp. 3d 283, 291 (E.D. Pa. 2020).

[66] In our opinion dismissing an earlier iteration of Ms. Twyman's complaint, we noted she had not pleaded a declaratory judgment claim and highlighted the typo/cut off sentence in Ms. Twyman's second amended Complaint creating ambiguity as to the declaratory judgment she sought. ECF 35 at 12–13 n.54. Ms. Twyman ignored this guidance and filed a third amended Complaint seeking "(a) a declaratory judgment finding that Defendant's actions" and, again, does not complete the sentence or explain what she would like us to find. ECF 39 at 28. Her declaratory judgment claim is dismissed with prejudice.

[67] *See Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016).

[68] 28 U.S.C. § 1367(a).

[69] *Id.* § 1367(c)(3); *cf. Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) (we must remand state law claims before us under section 1367 supplemental jurisdiction based on federal question where all federal claims are dismissed from the case).